**Maximo VILLALOBOS,
et al., Plaintiffs,**

v.

**NORTH CAROLINA GROWERS
ASSOCIATION, INC., et al.,
Defendants.**

**No. CIV. 97–1589(JAF).**

United States District Court,
D. Puerto Rico.

Feb. 17, 1999.

Julio M. Lopez–Keelan, San Juan, PR, for plaintiffs.

Luis D. Ortiz–Abreu, Goldman Antonetti & Cordova, San Juan, for defendants.

## OPINION AND ORDER

FUSTE, District Judge.

Plaintiffs, Puerto Rico migrant agricultural workers, bring this action against Defendants, North Carolina agricultural employers and the North Carolina Growers Association, Inc. ("NCGA"), alleging violations of the Migrant and Seasonal Agricultural Worker Protection Act ("AWPA"), 29 U.S.C. §§ 1821, 1822, and 1823.

---

1. Clearance orders are job offers containing terms and conditions of employment used to

## I.

### Background

In 1994, Defendant NCGA, acting as the agent and joint employer for the other defendants, prepared and submitted to the United States Department of Labor Regional Employment Training Administration ("ETA") in Atlanta and the North Carolina State Employment Security Agency ("NCSESA"), the local ETA office, clearance orders for agricultural jobs.[1] On behalf of over three-hundred and fifty North Carolina growers, NCGA filed the clearance orders which identified over twenty-five different crops and thirty different tasks with specialized wage rates. The ETA and NCSESA approved the clearance orders and transmitted them to the Puerto Rico Department of Labor, among other places.

The clearance orders, written in English not Spanish, specified that (1) they were "primarily for tobacco workers;" (2) the work weeks would be approximately forty hours; (3) the periods of employment would be from March 30, 1994 until November 1, 1994 for approximately two thousand eight-hundred workers and June 13, 1994 until November 1, 1994 for an additional four-hundred twenty-seven workers; (4) the work-related tools and equipment, bedding, and cooking utensils would be provided free of charge to the workers; (5) the working conditions would comply with applicable federal, state, and municipal laws; and (6) that employees would receive the same benefits, wages, and working conditions as temporary foreign workers. NCGA recruited and interviewed Plaintiffs by telephone through the Puerto Rico Department of Labor for the agricultural work in North Carolina described in the clearance orders.

Plaintiffs contend that the terms and conditions of their employment was materially different than that described in the

recruit potential employees.

clearance orders and that Defendants are liable. Plaintiffs allege that Defendants violated the AWPA by not providing the Plaintiffs with accurate written disclosures regarding the terms and conditions of employment in a language familiar to the Plaintiffs at the time of recruitment. Plaintiffs allege that the clearance orders omitted fundamental information, such as where Plaintiffs would be employed, in what agricultural area Plaintiffs would be working, which tasks Plaintiffs would perform, what compensation rate Plaintiffs would receive, and whether or not unemployment compensation would be provided. Plaintiffs maintain that since the information provided in the clearance orders was in English, a language in which most Plaintiffs were not fluent, it violates the Employment and Training Administration ("ETA") regulations, 29 U.S.C. §§ 1821(a) and (g).

Plaintiffs' second claim alleges that the terms of the clearance order were false or misleading, in violation of 29 U.S.C. §§ 1822 and 1823 because: Many of the Plaintiffs' jobs were not in tobacco; there was not enough work for all Plaintiffs; Defendants did not uniformly provide free work-related tools, bedding or cooking utensils; Defendants did not comply with applicable federal and state employment-related laws; and Defendants treated Plaintiffs less favorably than temporary foreign workers by not offering the same benefits, wages, and working conditions.

Plaintiffs' third claim is that Defendants failed to honor the working agreement they made with Plaintiffs, in violation of 29 U.S.C. § 1822, by failing to reimburse Plaintiffs for the reasonable costs of their transportation and subsistence from Puerto Rico to North Carolina and back to Puerto Rico.

Additionally, individual Plaintiffs have claims against individual Defendants for failure to pay wages due; failure to provide suitable housing; failure to keep proper payroll records to provide accurate, itemized pay statements; and use of trans-portation vehicles that do not comply with AWPA safety requirements. Finally, one Plaintiff, José Enrique Lugo, brings a discrimination claim against Defendant Bob Hendrix for allegedly retaliating against Lugo for attempting to enforce his rights under the AWPA.

Defendants have moved to dismiss Plaintiffs' claims alleging that (1) translation of the contents of the job order was the applicant holding state employment service agency's responsibility pursuant to 20 C.F.R. § 653.501(f)(2)(ii); (2) the Puerto Rico agency that recruited Plaintiffs was responsible for ensuring that they understood the terms and conditions of the jobs pursuant to 20 C.F.R. § 655.106(a); (3) the clearance orders do not violate the AWPA; (4) venue is improper since the majority of Plaintiffs' allegations occurred in North Carolina, not in Puerto Rico; and (5) this court lacks personal jurisdiction over at least some Defendants. Alternatively, Defendants move for a more definite statement pursuant to Federal Rule of Civil Procedure 8(a).

Plaintiffs responded that (1) read as a whole, their allegations meet the pleading requirements of Fed.R.Civ.P. 8(a); (2) Defendants are liable to Plaintiffs if the clearance orders violated the AWPA; (3) their complaint sets forth sufficient factual allegations as required by Fed.R.Civ.P. 8(a) and Defendants' motion for a more definite statement should be denied; (4) the court has personal jurisdiction over the Defendants; and (5) this court is a proper venue for Plaintiffs' claims. Plaintiffs then submitted an amended complaint.

## II.

### *Amendment of the Complaint*

The Federal Rules of Civil Procedure liberally allow Plaintiffs to amend their pleadings at the discretion of the court. Fed.R.Civ.P. 15(a) ("leave shall be freely given when justice so requires"). The Supreme Court has emphasized that leave ordinarily should be granted "in the ab-

sence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). Such amended pleadings relate back to the date of the filing of the original pleading, when the claim asserted "arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading." Fed. R.Civ.P. 15(c).

While we note that Plaintiffs have not per se moved to amend their complaint, we find no bad faith or dilatory actions on the part of Plaintiffs. The amended complaint is premised upon the same nucleus of operative facts as the original complaint and, therefore, Defendants will not be subject to any unfair surprise, undue delay or prejudice. Therefore, we accept Plaintiffs' amended complaint.

### III.

### *Motion to Dismiss Standard*

Under Rule 12(b)(6), a defendant may move to dismiss an action against him based only on the pleadings for "failure to state a claim upon which relief can be granted ...." Fed.R.Civ.P. 12(b)(6). In assessing a motion to dismiss, "[w]e begin by accepting all well-pleaded facts as true,

and we draw all reasonable inferences in favor of the [nonmovant]." *Washington Legal Foundation v. Massachusetts Bar Foundation,* 993 F.2d 962, 971 (1st Cir. 1993); *see also Coyne v. City of Somerville,* 972 F.2d 440, 442–43 (1st Cir.1992). We then determine whether plaintiffs have stated a claim under which relief may be granted.

### IV.

### *The Clearance Orders*

An agricultural and food processing clearance order ("clearance order") is "essentially an offer for a contract of employment," *Western Colorado Fruit Growers Ass'n v. Marshall,* 473 F.Supp. 693, 696 (D.Colo.1979), circulated through the interstate service system, which includes the regional offices of the ETA.[2] The ETA then attempts to coordinate the recruitment of workers. 20 C.F.R. § 655.101(c)(4). The goal of the interstate clearance system is to find domestic workers who meet the grower's needs. The interstate clearance system was established under authority conferred by the Wagner–Peyser Act of 1933, as amended, 29 U.S.C. § 49. Clearance orders are also the necessary precursor to an attempt to hire foreign workers. 29 U.S.C. § 1821(a)(1).

29 U.S.C. § 1821(a) details the precise information clearance orders shall contain,[3] and 29 U.S.C. § 1821(g) further provides:

---

2. ETAs are agencies within the Department of Labor that implement the Wagner–Peyser Act, as amended, 29 U.S.C. § 49, which establishes the interstate clearance system.

3. 29 U.S.C. § 1821(a) provides:
 Each farm labor contractor, agricultural employer, and agricultural association which recruits any migrant agricultural worker shall ascertain and disclose in writing to each such worker who is recruited for employment the following information at the time of the worker's recruitment:
 (1) the place of employment;
 (2) the wage rates to be paid;
 (3) the crops and kinds of activities on which the worker may be employed;

(4) the period of employment;
(5) the transportation, housing, and any other employee benefit to be provided, if any and any costs to be charged for each of them;
(6) the existence of any strike or other concerted work stoppage, slowdown, or interruption of operations by employees at the place of employment;
(7) the existence of any arrangements with any owner or agent of any establishment in the area of employment under which the farm labor contractor, the agricultural employer, or the agricultural association is to receive a commission or any other benefit resulting from any sales

The information required to be disclosed by subsections (a) through (c) of this section to migrant agricultural workers shall be provided in written form. Such information shall be provided in English or, as necessary and reasonable, in Spanish or other language common to migrant agricultural workers who are not fluent or literate in English . . . .

28 U.S.C. § 1821(g).

In the present case, Plaintiffs allege that Defendants violated the AWPA by not providing them with accurate written disclosures regarding the terms and conditions of employment in a language familiar to the Plaintiffs at the time of recruitment.

> by such establishment to the workers; and
> (8) whether State workers' compensation insurance is provided, and, if so, the name of the State workers' compensation insurance carrier, the name of the policyholder of such insurance, the name and the telephone number of each person who must be notified of an injury or death, and the time period within which such notice must be given.

4. 29 U.S.C. § 1822 provides:

> (a) Payment of wages
> Each farm labor contractor, agricultural employer, and agricultural association which employs any migrant agricultural worker shall pay the wages owed to such worker when due.
> (b) Purchase of goods or services by worker
> No farm labor contractor, agricultural employer, or agricultural association shall require any migrant agricultural worker to purchase any goods or services solely from such farm labor contractor, agricultural employer, or agricultural association.
> (c) Violation of terms of working arrangement
> No farm labor contractor, agricultural employer, or agricultural association shall, without justification, violate the terms of any working arrangement made by that contractor, employer, or association with any migrant agricultural worker.
> 29 U.S.C. § 1822.

29 U.S.C. § 1823 provides in relevant part:

> (a) Compliance with substantive Federal and State safety and health standards—Except as provided in subsection (c) of this

29 U.S.C. §§ 1821(a) and (g). Plaintiffs also allege that the claims in the clearance order were false or misleading, in violation of 29 U.S.C. §§ 1822 and 1823 [4].

■ We find from the clear language of the statute that Plaintiffs have stated a claim. 29 U.S.C. § 1821(g) specifically provides that clearance order information "shall be provided . . . in Spanish or other language common to migrant agricultural workers who are not fluent or literate in English." 29 U.S.C. § 1821(g). Plaintiffs allege that their clearance orders were not in Spanish and the majority of them are not fluent or literate in English.

> section, each person who owns or controls a facility or real property which is used as housing for migrant agricultural workers shall be responsible for ensuring that the facility or real property complies with substantive Federal and State safety and health standards applicable to that housing.
> (b) Certification that applicable safety and health standards met; posting of certificate of occupancy; retention of certificate and availability for inspection and review; occupancy prior to inspection -
> (1) Except as provided in subsection (c) of this section and paragraph (2) of this subsection, no facility or real property may be occupied by any migrant agricultural worker unless either a State or local health authority or other appropriate agency has certified that the facility or property meets applicable safety and health standards. No person who owns or controls any such facility or property shall permit it to be occupied by any migrant agricultural worker unless a copy of the certification of occupancy is posted at the site. The receipt and posting of a certificate of occupancy does not relieve any person of responsibilities under subsection (a) of this section. Each such person shall retain the original certification for three years and shall make it available for inspection and review in accordance with section 1862 of this title.
> (2) Notwithstanding paragraph (1) of this subsection, if a request for the inspection of a facility or real property is made to the appropriate State or local agency at least forty-five days prior to the date on which it is occupied by migrant agricultural workers and such agency has not conducted an inspection by such date, the facility or property may be so occupied.
> 29 U.S.C. § 1823(a) and (b).

However, Defendants have moved to dismiss Plaintiffs' claims alleging that (1) translation of the contents of the job order was the responsibility of the applicant holding state employment service agency pursuant to 20 C.F.R. § 653.501(f)(2)(ii); (2) the Puerto Rico agency that recruited Plaintiffs was responsible for ensuring that they understood the terms and conditions of the jobs pursuant to 20 C.F.R. § 655.106(a); and (3) the clearance orders do not violate the AWPA because they were accepted and approved by the ETA.

To address Defendant's motion, we look to the Code of Federal Regulations. 20 C.F.R. § 653.501(f)(2)(ii) directs ETA offices to provide "workers referred on clearance orders with a checklist summarizing material specifications on the job order. Such checklists, where necessary, shall be in English and Spanish." 20 C.F.R. § 653.501(f)(2)(ii). This is reinforced by 20 C.F.R. § 653.103(b), which states:

> [W]hen a MSFW [migrant and seasonal farm worker] applies for JS [job service] services at a local office or is contacted by an Outreach worker, the services available through the JS shall be explained to the MSFW. In local offices which have been designated as significant MSFW bilingual offices by the ETA, this explanation shall be made in Spanish, if necessary or requested during any period of substantial MSFW activity.

20 C.F.R. § 653.103(b). A related provision requires that Outreach workers in bilingual offices explain the services available in Spanish to MSFWs if necessary or requested. 20 C.F.R. § 653.103(b). A separate provision specifically addresses local offices designated as significant MSFW bilingual offices by ETA stating that, "bilingual (English–Spanish) staff shall assist all agricultural workers, upon request, to understand the terms and conditions of employment set forth in intrastate and interstate job orders and shall provide such workers with checklists in Spanish showing wage payment schedules, working conditions and other material specifications of the job order." 20 C.F.R. § 653.501(h). Finally, 20 C.F.R. § 653.501(e) requires that the ETA not place a job order for agricultural workers with interstate clearance unless "the job order meets the requirements set forth at paragraphs (d)(1) through (d)(6) of this section." 20 C.F.R. § 653.501(e)(1).[5]

From the foregoing, we find that it was the responsibility of the Puerto Rico ETA office to translate the clearance orders. The Puerto Rico ETA office is a bilingual office and, thus, responsible for translation under 20 C.F.R. § 653.501(f)(2)(ii). However, the scope and purpose of the AWPA, a federal statute, exceeds the ETA's limited mandate over employers that hire temporary foreign workers. Thus, even if Defendants' clearance orders satisfied the ETA standards, they could still violate the broader mandate of the AWPA. The text of 29 U.S.C. § 1821(g) leads to the conclusion that the ETA does not enforce the AWPA. After stating that the section applies to job clearance orders, section 1821(g) states that "[s]uch information shall be provided in English or, *as necessary and reasonable, in Spanish* or other language common to migrant agricultural workers who are not fluent or literate in English . . . ." 29 U.S.C. § 1821(g) (emphasis added). We find that Defendants were obligated to provide the job clearance orders in Spanish in this case.

We are unpersuaded by Defendants' claims that they had no idea where their clearance orders were going to be sent. A recent Department of Labor report found that 78% of all farm workers in the United States are of Hispanic origin.[6] It is im-

---

**5.** 20 C.F.R. § 653.501(d)(1) through (d)(6) enumerates all the necessary information for a clearance order.

**6.** Office of Assistant Secretary for Policy, U.S. Department of Labor, *A Profile of United States Farmworkers: Demographics, Household Composition, Income and Use of Services*

plausible to believe that Defendants, agricultural contractors and an agent and joint agricultural employer in North Carolina, had no idea that the recruited workers would be largely of Hispanic origin. Additionally, the ETA regulations specifically require that positive recruitment should be conducted in areas with "traditional or expected labor supply where the RA [recruitment agent] finds ... that there are a significant number of able and qualified U.S. workers who, if recruited, would be willing to make themselves available for work at the time and place needed." 20 C.F.R. § 655.105(a). Puerto Rico is an area with a "traditional or expected labor supply" for agricultural workers. Therefore, we deny Defendants' motion to dismiss Plaintiffs' claim of violation of the AWPA for not providing the information in the clearance orders in Spanish, a language common to Plaintiffs.

■ Next, we turn to Plaintiffs' claims that the clearance orders were false or misleading in violation of 29 U.S.C. §§ 1822 and 1823. Defendants allege that they cannot be held liable for alleged deficiencies in the clearance orders because the Department of Labor ETA accepted and approved them and, therefore, pursuant to 20 C.F.R. § 653.501,[7] all the neces-

sary information was provided. We again recognize that this is a case of dual obligations upon both the agricultural contractors under the AWPA and the ETA under the Code of Federal Regulations. By submitting the information to the ETA, Defendants assert that they are absolved of responsibility and that their duty is fulfilled. We disagree. Under the circumstances of this case as discussed above, simply submitting the clearance order to the ETA is not enough to satisfy the mandate. of the AWPA. Accordingly, we deny Defendants' motion to dismiss Plaintiffs' claims that the clearance orders were false or misleading pursuant to 29 U.S.C. §§ 1822 and 1823. As we find Plaintiffs' claims to be sufficient to survive Defendants' motion to dismiss, we also deny Defendants' motion for a more definite statement.

## V.

### Personal Jurisdiction

■ Defendants allege that this court lacks personal jurisdiction over them.[8] Defendants assert that they have not established minimum contacts sufficient to "purposefully avail themselves" to Puerto Rico. *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90

(April 1997) (basing data on the National Agricultural Survey).

7. 20 C.F.R. § 653.501 provides, in relevant part, that all clearance orders that enter into the interstate clearance system meet the following requirements:

(d)(1) that it does not contain any unlawful discriminatory specification;
(d)(2) The employer has signed the job order and the job order states all the material terms and conditions of the employment, including:
 (i) The crop;
 (ii) The nature of the work;
 (iii) The anticipated period and hours of employment ....
(d)(2)(v)(E) Employers may require workers to perform alternative work if the guarantee in this section is invoked and if such alternative work is stated on the job order
....

(d)(2)(vii) Any deductions to be made from wages ....
(d)(2)(xii) Assurances that the working conditions comply with applicable Federal and State minimum wage, child labor, social security, health and safety, farm labor contractor registration and other employment-related laws ....
(d)(2)(xv) An assurance of the availability of no cost or public housing which meets the Federal standards and which is sufficient....
20 C.F.R. § 653.501.

8. Defendants have asserted that this court lacks personal jurisdiction "over all, or at least some, of the Defendants." *Docket Document No. 13.* However, this is the first and only time such possibly-limiting language is used by Defendants. Therefore, for the purposes of this opinion, we are assuming Defendants' argument to be a lack of jurisdiction over all of them.

L.Ed. 95 (1945). When personal jurisdiction is contested, the plaintiff has the burden of proving facts sufficient to sustain jurisdiction. *Ticketmaster–New York, Inc. v. Alioto,* 26 F.3d 201, 204 (1st Cir.1994); *Goldman Antonetti v. Medfit International, Inc.,* 982 F.2d 686, 690 (1st Cir.1993); *see also Villa Marina Yacht Sales, Inc. v. Hatteras Yachts,* 915 F.2d 7 (1st Cir.1990). There are two kinds of personal jurisdiction, general and specific, each entailing its own analysis.[9] Specific personal jurisdiction, which is applicable in this case, relies on two distinct bodies of law—the forum's long-arm statute or a statutory grant conferring jurisdiction, and constitutional due process requirements. *Foster–Miller, Inc. v. Babcock & Wilcox Canada,* 46 F.3d 138, 144 (1st Cir.1995).

In *Pritzker v. Yari,* 42 F.3d 53, 61 (1st Cir.1994), a case that is instructive in deciding if we have jurisdiction, the Court of Appeals for the First Circuit noted that there is a three-prong test for determining whether in personam jurisdiction is proper:

First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's court foreseeable. Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable.

*Pritzker,* 42 F.3d at 61 (citing *United Elec. Workers v. 163 Pleasant St. Corp.,* 960 F.2d 1080, 1089 (1st Cir.1992) (*"Pleasant Street I"*)); *see also Ticketmaster–New York, Inc. v. Alioto,* 26 F.3d 201, 206 (1st Cir.1994); *Pizarro v. Hoteles Concorde Int'l,* 907 F.2d 1256, 1258 (1st Cir.1990).

Recognizing that these three factors are admittedly less than all encompassing, the First Circuit has added some Gestalt factors to assist in determining the reasonableness of the exercise of personal jurisdiction. These factors include:

(1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.

*Pritzker,* 42 F.3d at 63–64 (citing *Pleasant St. I,* 960 F.2d at 1088). "These Gestalt factors are designed to put into sharper perspective the reasonableness and fundamental fairness of exercising jurisdiction in particular situations." *Id.* (citing *Ticketmaster–New York,* 26 F.3d at 210).

## VI.

### *Analysis*

The AWPA grants a private right of action for persons aggrieved by an agricultural employer and allows such persons to file suit in any federal district court having jurisdiction over the parties. 29 U.S.C. § 1854(a). Thus, Plaintiffs have a statutory grant of jurisdiction satisfying the first prong of our inquiry. *Foster–Miller,* 46 F.3d at 144 (the first prong is satisfaction of the forum's long-arm statute or other statutory grant conferring jurisdiction). However, to exercise personal jurisdiction over Defendants, they must have sufficient "minimum contacts" with Puerto Rico to satisfy due process requirements. *International Shoe,* 326 U.S. at 316, 66 S.Ct. 154.

### A. *Relatedness*

 Relatedness is, "relatively speaking, a flexible, relaxed standard." *Pritz-*

---

**9.** General jurisdiction is clearly inapplicable in this case as it requires the defendant to have been systematically and continuously active in the forum, although such activity was unconnected with the cause of the suit. *Foster–Miller, Inc. v. Babcock & Wilcox Canada,* 46 F.3d 138, 144 (1st Cir.1995).

*ker,* 42 F.3d at 61 (citing *Ticketmaster–New York,* 26 F.3d at 207). In this case, Plaintiffs, Puerto Rico migrant agricultural workers, are suing Defendants for violation of their rights during their recruitment in Puerto Rico. Thus, the question becomes whether Plaintiffs' claims are related to Defendants' activities in Puerto Rico. We find that they are sufficiently related.

Defendants submitted the clearance orders to the ETA system and reasonably should have known recruitment was likely to take place in Puerto Rico, a traditional recruiting spot for agricultural workers. *See Rios v. Altamont Farms, Inc.,* 64 N.Y.2d 792, 486 N.Y.S.2d 913, 476 N.E.2d 312 (1985) (adopting dissenting opinion of Levine, J., in 100 A.D.2d 405, 475 N.Y.S.2d 520 (N.Y.A.D.1984)) (holding that New York corporate apple grower who submitted clearance orders for interstate recruitment of workers has sufficient minimum contacts with Puerto Rico by virtue of fact that he had made business judgment to seek labor and was aware that offer would be forwarded to surplus labor areas such as Puerto Rico). Here, Plaintiffs' claims arise out of recruitment efforts in Puerto Rico. Defendants submitted their clearance orders into the interstate clearance system and then Defendant NCGA, acting as an agent for the other Defendants, conducted telephone interviews with the Puerto Rico workers. We find that these actions meet the relatedness standard.

**B. *Purposeful Availment***

Next, we determine whether Defendants' contacts with Puerto Rico "represent a purposeful availment of the privilege of conducting activities in [Puerto Rico], thereby invoking the benefits and protections of [its] laws and making the defendant's involuntary presence before [the Puerto Rico-based] court foreseeable." *Pleasant St. I,* 960 F.2d at 1089. We begin by noting that a single contact can suffice, so long as it is substantial. *McGee v. International Life Ins. Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957) ("It is sufficient for purposes of due process that the suit was based on a contract which had substantial connection with that State."). "Accordingly, *McGee* stands for the proposition that 'minimum contacts' is not necessarily a numbers game; a single contract can fill the bill." *Pritzker,* 42 F.3d at 61. In *McGee,* an out-of-state insurer's written insurance policy for a California resident was held to be a substantial contact for the court to exercise jurisdiction over the insurer, even though the insurer had no agent or office in California and did no other business in that state.

An analogous case, *Rios v. Altamont Farms, Inc.,* 64 N.Y.2d 792, 486 N.Y.S.2d 913, 476 N.E.2d 312 (1985) (adopting dissenting opinion of Levine, J., in 100 A.D.2d 405, 475 N.Y.S.2d 520 (N.Y.A.D.1984)), leans in favor of the exercise of jurisdiction. In *Rios,* Puerto Rico migrant farm workers moved to enforce a default judgment against New York apple growers. The court held that exercising personal jurisdiction over the growers did not violate due process because the growers had submitted clearance orders to the interstate clearance system aware of the reality that such orders would be forwarded to surplus labor areas such as Puerto Rico. *Id.* The court found that by submitting the clearance orders, defendants had purposefully sent their clearance orders into the stream of interstate commerce to recruit out-of-state labor.

■ We find that Defendants have purposefully availed themselves of the benefits of conducting business in Puerto Rico. Defendants submitted their clearance orders into the ETA interstate clearance system and should have known that such orders would likely be used to recruit workers in Puerto Rico, a traditional source of migrant agricultural labor. By submitting the clearance orders and conducting telephone interviews through NCGA, we hold that Defendants have purposefully availed themselves of the bene-

fits and protections of the laws of Puerto Rico. *See World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 295, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *see also Garcia v. Vasquez,* 524 F.Supp. 40 (S.D.Tex. 1981) (North Carolina company held subject to Texas personal jurisdiction where company had submitted clearance and recruited Texas resident workers, even though recruitment occurred in Minnesota).

#### C. *Reasonableness*

■ The third factor we must examine is reasonableness. We turn to the five Gestalt factors to access the reasonableness of exercising jurisdiction over Defendants. It is undeniably somewhat burdensome for Defendants to appear in Puerto Rico as they are all businesses based in North Carolina. However, to tip the scales in their favor, Defendants need to demonstrate a "special or unusual burden" making their appearance *unduly* burdensome. *Sawtelle v. Farrell,* 70 F.3d 1381, 1395 (1st Cir.1995) (citing *Pritzker,* 42 F.3d at 64) (emphasis added). No such showing has been made here. Secondly, Puerto Rico, the forum state, has a strong interest in adjudicating the dispute, since the Plaintiffs are all Puerto Rican workers, who, based on the recruitment activities conducted in Puerto Rico, traveled to North Carolina for employment with Defendants. *Burger King Corp. v. Rudwicz,* 471 U.S. 462, 473, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (citing *McGee,* 355 U.S. at 223, 78 S.Ct. 199) (noting that a state has a "manifest interest" in adjudicating disputes of residents for harms inflicted by out-of-state actors). Thirdly, Plaintiffs have a strong interest in obtaining convenient and effective relief for their alleged wrongs. Additionally, the judicial system's interest in obtaining the most effective resolution of the controversy weighs in favor of our exercise of personal jurisdiction, as the act of recruiting occurred in Puerto Rico and the Plaintiffs are Puerto Rico residents. Finally, it is in the common interests of all sovereigns for Defendants to be subject to personal jurisdiction in Puerto Rico, because such a practice promotes the substantive social policies of holding employers engaged in interstate commerce accountable in all jurisdictions in which they solicit employees.

Based upon the foregoing analysis, we find that we have personal jurisdiction over Defendants.

### VII.

#### *Venue*

■ Defendants contend that venue in this court is improper, alleging that all of the activities giving rise to the claim occurred in North Carolina. Plaintiffs contend that the AWPA is a venue-conferring statute which makes venue coextensive with jurisdiction. Thus, they allege that, under the AWPA, if there is jurisdiction, venue is proper.

29 U.S.C. § 1854(a) states:

> Any person aggrieved by a violation of this chapter or any regulations under this chapter by a farm labor contractor, agricultural employer, agricultural association, or other person may file suit in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy and without regard to the citizenship of the parties and without regard to exhaustion of any alternative administrative remedies provided herein.

29 U.S.C. § 1854(a). Two courts which have considered section 1854(a) have concluded that it statutorily confers venue to the same extent as jurisdiction. In *Stewart v. Woods,* 730 F.Supp. 1096 (M.D.Fla. 1990), the court concluded that because (1) section 1854(a) contains identical language to the venue-conferring statute of the Labor Management Relations Act, 29 U.S.C. § 185(a); and (2) the statutes that are worded in the same manner should be construed consistently, section 1854(a) was a venue-conferring statute. *Id.* Six years later, in *Astorga v. Connleaf, Inc.,* 962

F.Supp. 93, 96 (W.D.Tex.1996), the court concluded that venue was proper under section 1854(a) by virtue of the fact that the court had personal jurisdiction over the parties. *Id.*

We find venue to be proper in this case. We agree with the reasoning of the district courts in *Stewart* and *Woods* and, accordingly, find that 29 U.S.C. § 1854(a) is a venue-conferring · statute making venue coextensive with personal jurisdiction. Thus, we find that venue is proper in this case due to the fact that we have already concluded we have personal jurisdiction over Defendants.

Defendants alternatively move for a change of venue pursuant to 28 U.S.C. § 1404, contending that even if venue is proper, the doctrine of forum non conveniens dictates that venue be changed to North Carolina.

 Federal law, specifically 28 U.S.C. § 1404(a), governs a district court's decision to grant a change of venue for forum non-conveniens. Section 1404(a) reads: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The burden of proof is on the movant and "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947); *see also Royal Bed & Spring Co. v. Famossul,* 906 F.2d 45, 52 (1st Cir. 1990). Section 1404(a) is intended to place discretion in the district .court to adjudicate motions for transfer according to an "individualized, case-by-case consideration of convenience and fairness." *Stewart,* 487 U.S. at 29, 108 S.Ct. 2239 (citing *Van Dusen v. Barrack,* 376 U.S. 612, 622, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964)). A motion to transfer under section 1404(a), thus, calls on the district court to balance a number of case-specific factors including: (1) convenience of the parties; (2) conve-

nience of the witnesses; and (3) the relative ease of access to sources of proof. *Cianbro Corp. v. Curran–Lavoie, Inc.,* 814 F.2d 7, 11 (1st Cir.1987).

 Looking at the particulars of this case, we find venue to be proper. Puerto Rico is where the Plaintiffs reside and where the recruitment took place, the basis of two of the three claims by all Plaintiffs. Additionally, Plaintiffs are indigent workers without the resources for travel and a prolonged stay in North Carolina, while Defendants are in a better position to finance such an expense. Convenience of the witnesses likewise counsels towards venue in Puerto Rico. The employees of the recruitment office of the Department of Labor are in Puerto Rico, as are persons with the knowledge of the ETA office operations. Finally, access to proof is facilitated if Puerto Rico is the venue because that is where Defendants received the clearance orders and job descriptions. Additional proof relating to the ETA operations is also easily accessible in Puerto Rico. As to Defendants' contention that their business is time sensitive and, thus, Puerto Rico is a forum non conveniens, we are not persuaded. A trial in either location is disruptive of normal schedules. The balance of factors does not favor a transfer of venue to North Carolina. We, accordingly, deny Defendants' motion for a transfer of venue.

## VIII.

### *Conclusion*

In accordance with the foregoing, we **GRANT** Plaintiffs' motion to amend the complaint; **DENY** Defendants' motion to dismiss; **DENY** Defendants' motion for a more definite statement; and **DENY** Defendants' motion for a transfer of venue.

This Opinion and Order disposes of *Docket Documents Nos. 13, 15, and 16.*

**IT IS SO ORDERED.**