**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT



| | |
|---|---|
| WORLDWIDE SUBSIDY GROUP, LLC, a Texas Limited Liability Company, | No. 14-56819 |
| Plaintiff-Appellant, | D.C. No. 2:14-cv-00013-MMM-MAN |
| v. | |
| FEDERATION INTERNATIONALE DE FOOTBALL ASSOCIATION, | MEMORANDUM* |
| Defendant-Appellee. | |

Appeal from the United States District Court
for the Central District of California
Margaret M. Morrow, District Judge, Presiding

Argued and Submitted November 8, 2016
Pasadena, California

Before: BERZON, CHRISTEN, and NGUYEN, Circuit Judges.

Worldwide Subsidy Group (Worldwide) appeals the district court's

dismissal of its contract action against Fédération Internationale de Football

Association (FIFA) for lack of personal jurisdiction. We reverse.

---

       * This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

We review de novo a district court's determination that it does not have personal jurisdiction over a defendant. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). Here, Worldwide only appeals the portions of the district court's decisions relating to a forum selection clause in an alleged contract between the parties. The issue on appeal is whether there was written evidence of mutual assent to the contract. "[L]egal conclusions regarding the existence of a valid, binding contract are reviewed de novo and factual findings underlying it for clear error." *Casa del Caffe Vergnano S.P.A. v. ItalFlavors, LLC*, 816 F.3d 1208, 1211 (9th Cir. 2016).

Because "the motion [to dismiss was] based on written materials rather than an evidentiary hearing, [Worldwide] need only make a prima facie showing of jurisdictional facts." *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1066 (9th Cir. 2014) (quoting *Schwarzenegger*, 374 F.3d at 800). "[U]ncontroverted allegations in [Worldwide's] complaint must be taken as true," and "any evidentiary materials submitted on the motion 'are construed in the light most favorable to the plaintiff[] and all doubts are resolved in [its] favor.'" *Ochoa v. J.B. Martin & Sons Farms, Inc.*, 287 F.3d 1182, 1187 (9th Cir. 2002) (quoting *Metro. Life Ins. Co. v. Neaves*, 912 F.2d 1062, 1064 n.1 (9th Cir. 1990)).

The three communications presented in Worldwide's amended complaint—Worldwide's faxes from March 10, 2001, and July 22, 2001, and FIFA's July 31, 2001, email—are sufficiently connected to be taken together as a single memorandum capable of evidencing an agreement. *See Searles v. Gonzalez*, 216 P. 1003, 1004 (Cal. 1923) ("A memorandum or promise, binding under the statute of frauds, may be gathered from several writings between the parties with reference to the subject-matter and so connected with each other that they may fairly be said to constitute one paper relating to the contract."). Thus, FIFA's July 31 email must be interpreted within the context of Worldwide's July 22 fax and the incorporated Representation Agreement sent to FIFA on March 10.

In its July 22 fax, Worldwide requested "executed originals of the contracts previously forwarded to [FIFA's] attention," but also noted it would "proceed in reliance on the terms set forth in the previously forwarded contracts" until it received "such originals, or comments thereto." FIFA's response included no comments on the "previously forwarded contracts," nor were any alternative terms proposed. Instead, FIFA's direct response to the July 22 fax stated, "FIFA is interested in testing [Worldwide's] services . . . . Please go ahead with the necessary steps and keep us informed about the proceedings and the outcome." Reading the three documents together, FIFA's July 31 email affirmatively accepted

3

Worldwide's offer to provide services on the basis of the terms previously circulated, which Worldwide had advised would govern absent signed originals.

FIFA's use of the term "testing" in its email cannot sensibly be read as a suggestion of going ahead on some other basis. The indefinite "interested in testing" language provides no alternative new substantive term, and so was not a counteroffer. *See* Restatement (Second) of Contracts § 39(1) (1981) ("A counter-offer is an offer made by an offeree to his offeror relating to the same matter as the original offer and proposing a substituted bargain differing from that proposed by the original offer."). Additionally, while FIFA's "interested in testing" sentence might on its own be read as equivocal, language "cannot be found to be ambiguous in the abstract." *Palmer v. Truck Ins. Exch.*, 988 P.2d 568, 575 (Cal. 1999). Instead, in context of the memorandum, FIFA's "testing" statement was simply a recognition that FIFA could sometime in the future terminate the agreement.

Moreover, "proceedings," in the context of Worldwide's niche business, most reasonably refers to the administrative proceedings before copyright boards that Worldwide handles on its clients' behalf. Such proceedings, under the alleged facts, generally take many years before reaching an "outcome." Thus, even "testing" Worldwide's services would necessarily require engaging Worldwide for several years of annual registrations, negotiations, and administrative proceedings.

4

In short, reading the memorandum as a whole and in light of the circumstances in which it was formed, a reasonable person in Worldwide's position would construe the documents as evidencing mutual assent to the Representation Agreement and its forum selection clause. *See Weddington Prods., Inc. v. Flick*, 71 Cal. Rptr. 2d 265, 277 (Cal. Ct. App. 1998) ("'Mutual assent is gathered from the reasonable meaning of the words and acts of the parties, and not from their unexpressed intentions or understanding.' The parties' outward manifestations must show that the parties all agreed 'upon the same thing in the same sense.'" (first quoting 1 Bernard E. Witkin, *Summary of California Law* § 119 (9th ed. 1987); then quoting Cal. Civ. Code § 1580)).

Worldwide's written communications to FIFA between 2001 and 2007 confirm that, in conformity with the July 31 email, the parties treated the contract as having been entered into. Worldwide sent FIFA two "client newsletter[s]" within nine months of FIFA's July 31 email and later sent FIFA updates regarding changes to Worldwide's contact information for notices sent pursuant to the representation agreement. Additionally, while the April 2002 client newsletter's discussion of administrative proceedings for the 1998 and 1999 program years was not directly relevant to FIFA, the letter did inform FIFA of the protracted timing of

proceedings generally, and that no plan had been announced for proceedings for subsequent years.

In sum, taking the uncontroverted allegations in the complaint as true and construing the evidentiary materials in the light most favorable to the plaintiff, Worldwide has made a prima facie showing of an enforceable contract and, thus, of personal jurisdiction. *See Ochoa*, 287 F.3d at 1187.

**REVERSED AND REMANDED.**