TPS UTILICOM SERVICES,
INC., Plaintiff,

v.

AT & T CORP. et al., Defendants.

No. CV 01–9237 SVW (SHx).

United States District Court,
C.D. California,
Western Division.

Aug. 21, 2002.

Brian Sean Currey, O'Melveny & Myers, Los Angeles, CA, Brian P. Brooks, O'Melveny & Myers, Newport Beach, CA, for Plaintiff.

Christopher B. Hockett, David H. Fallek, Bingham McCutchen, San Francisco, CA, Kenneth D. Klein, Amy M Gallegos, Hogan & Hartson, Los Angeles, CA, Jonathan S. Franklin, Michele C. Farguhar, Hogan & Hartson, Washington, DC, for Defendants.

**ORDER DENYING PLANTIFF'S MOTION FOR REMAND AND GRANTING DEFENDANTS' MOTIONS TO DISMISS**

WILSON, District Judge.

The Plaintiff, TPS Utilicom Services, Inc. ("TPS"), filed suit in state court for: 1) unfair business practices under California Business & Professions Code § 17200 et seq.; and 2) interference with prospective economic advantage, against the defendant telecommunications companies AT & T Corp., AT & T Wireless PCS Interests, L.L.C., AT & T Wireless PCS, L.L.C., AT & T Communications of California, Inc., AT & T Wireless Services, Inc., AT & T Wireless Services of California, L.L.C. (collectively, "AT & T"), and Alaska Native Wireless, L.L.C. ("ANW")("Defendants"). Two of the Defendants—AT & T Communications of California, Inc. and AT & T Wireless Services of California, L.L.C. ("resident defendants")—are California citizens for purposes of diversity.

The Defendants removed the action on the basis of diversity and federal question jurisdiction through complete preemption. The Plaintiff now seeks to remand the action; the AT & T defendants move to dismiss on grounds of preemption, referral under the doctrine of primary jurisdiction, and failure to state a claim under state law; and the ANW defendant moves to dismiss on those grounds and in the alternative for lack of personal jurisdiction. The AT & T Defendants join ANW's Opposition to TPS's motion to remand. ANW joins the AT & T Defendant's motion to dismiss.

The motions present an intricate question of subject matter jurisdiction. The Court must ascertain its jurisdiction before it can reach any of the AT & T defendants' arguments for dismissal.[1]

---

1. The issue is complicated by the Defendants' failure to assert federal question jurisdiction under 28 U.S.C. § 1331 through the artful pleading exception to the well-pleaded complaint rule as a basis for removal in their notice of removal.

Having considered the papers and arguments presented in this matter, the Court finds that subject matter jurisdiction is not conferred by complete preemption under the Federal Communications Act. However, TPS has fraudulently joined the resident Defendants in an effort to defeat diversity. Accordingly, the Court has subject matter jurisdiction based on diversity, and the Court DENIES the Plaintiff's application for remand.

On the merits the complaint is deficient. The allegation of interference with prospective economic advantage fails on state law grounds. In any event both claims are subject to express and conflict preemption under the FCA. Accordingly, the Court GRANTS the Defendants' motions to dismiss and dismisses the complaint.

## I. Introduction.

This lawsuit concerns a Federal Communications Commission ("FCC") auction for four hundred twenty two (422) wireless telecommunication spectrum licenses. The auction for a subset of the licenses was limited to "designated entities;" for the remaining licenses subject to open bidding, designated participants benefitted from "auction credits" that improved their bidding positions. The Plaintiff participated in the auction as a designated entity and lost various bids to one of the Defendants, a designated entity named Alaska Native Wireless, L.L.C. ("ANW"). The Plaintiff contends that ANW was a Trojan horse by which AT & T—a majority shareholder of ANW—entered auctions under the guise of a designated entity.

The Plaintiff filed suit in state court against ANW and several AT & T affiliates, as set forth above, alleging unfair business practices and interference with prospective economic advantage. The Plaintiff seeks in excess of $1 billion in damages and restitution. The Defendants removed on the basis of diversity, claiming fraudulent joinder of the resident defendants, and claiming complete preemption under the Federal Communications Act of 1934.

Several motions are now pending before the Court. The AT & T defendants move to dismiss under theories of preemption, failure to state a claim, or in the alternative in conjunction with a FCC referral under the primary jurisdiction doctrine. ANW moves to dismiss for lack of personal jurisdiction. The Plaintiff moves to remand, arguing that the resident Defendants are properly joined and defeat removal on grounds of diversity.

## II. Facts.

The underlying facts of this action are extensively discussed in the moving papers. Other than as identified in the analysis there are no material facts in dispute.

## III. Analysis.

The Court must ascertain its subject matter jurisdiction before testing either ANW's challenge to personal jurisdiction, or AT & T's challenges to the choice of law, the forum or the adequacy of the complaint.

A federal court may exercise removal jurisdiction over a case only if jurisdiction existed over the suit as originally brought by the plaintiff. *See* 28 U.S.C. § 1441(a). A strong presumption exists against removal jurisdiction. *See Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). The removing party bears the burden of establishing that federal subject matter jurisdiction exists. *See Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97, 42 S.Ct. 35, 37, 66 L.Ed. 144 (1921); *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir.1988).

In this matter the Defendants argue that there is a federal question un-

der the doctrine of complete preemption, and diversity under the fraudulent joinder analysis.[2]

## A. Subject Matter Jurisdiction.

The Court may have subject matter jurisdiction of this action through federal question jurisdiction or diversity. Although the complaint pleads only two state causes of action, AT & T argues that it nonetheless presents a federal question as a function of complete preemption by the Communications Act of 1934, as amended, 47 U.S.C. §§ 151 et. seq ("FCA"). AT & T also argues that this Court has diversity jurisdiction, on grounds that the Plaintiff fraudulently joined the two resident Defendants. TPS, in turn, argues that the Court has no jurisdiction over this action.[3]

2. The Court only reaches federal question jurisdiction as an alternative basis of subject matter jurisdiction. Although not discussed in the Order, the two claims in this complaint undoubtedly arise under the Federal Communications Act and provide subject matter jurisdiction under 28 U.S.C. § 1331.

The problem with this action in its current posture is whether the Defendants have waived this basis of subject matter jurisdiction by failing to raise it in their notice of removal. Subject matter jurisdiction is the basic question of the power of this Court to decide the matter before it. Although parties may not collude to manufacture subject matter jurisdiction, a party may through ineptitude waive its right to claim this Court's jurisdiction. The parties vigorously dispute whether the Court has the power to consider, on its own motion, a theory of federal question jurisdiction that the Defendants failed to assert in their notice of removal. The issue appears unresolved.

The Plaintiff correctly argues that a district court abuses its discretion to permit a removing defendant to amend a notice of removal to raise additional bases for subject matter jurisdiction after expiration of the thirty day removal period provided at 28 U.S.C. § 1446(b). *See, e.g., ARCO Environmental Remediation, L.L.C. v. Department of Health and Environmental Quality of the State of Montana,* 213 F.3d 1108, 1117 (9th Cir.2000)(notice of removal cannot be amended to add a separate basis for removal jurisdiction after the thirty day period); *O'Halloran v. University of Washington,* 856 F.2d 1375, 1381 (9th Cir.1988)(same). However, in this action the Court, not the Defendants, raises the issue of a federal question arising under the Communications Act. It is the Court's duty to question the basis of its subject matter jurisdiction.

On the other hand, the Court is not limited to the bases of jurisdiction asserted by error in a faulty notice of removal, so long as there is no objection to the Court's actual basis of jurisdiction. *See, e.g., Prize Frize, Inc. v. Matrix (U.S.) Inc.,* 167 F.3d 1261, 1265 (9th Cir.1999) ("Ordinarily, the existence of subject matter jurisdiction at time of judgment cures any defects in removal procedure. *See Grubbs v. General Elec. Credit Corp.,* 405 U.S. 699, 702, 92 S.Ct. 1344, 31 L.Ed.2d 612 (1972)."). In this action, TPS strongly objects to any new theory of federal question jurisdiction and argues that the Defendants in fact waived any federal question jurisdiction based on questions arising under the Communications Act. *See, e.g.,* Plaintiff's Brief in Response to Defendants' Supplemental Brief Concerning Subject Matter Jurisdiction at 2. The difference in the two positions is the narrower scope of removal jurisdiction under 28 U.S.C. § 1441 as compared to federal question jurisdiction under 28 U.S.C. § 1331. Although the issue is joined in the Supplemental Briefs, the Court declines to settle the dispute.

3. The Plaintiff does not deal with the Defendants' complete preemption argument. To the contrary, the Plaintiff simply asserts that "Defendants do not even pretend that this action is subject to federal-question jurisdiction." Plaintiff's Mem. in Opp. to Motion to Dismiss ("Pl.Opp.") at 3.

In their argument for dismissal the Defendants expressly rely upon *Bastien v. AT&T Wireless Services, Inc.,* 205 F.3d 983, 986–87 (7th Cir.2000), a case holding that the FCA completely preempts relevant state claims. *See* Defendants Mem. in Support of Defendants' Motion to Dismiss ("Def.Mem.") at 5. Although the Defendants couch their argument in terms of express preemption, the Court also reads this as an argument for complete preemption.

The Court finds several of Plaintiff's admissions in the moving papers significant. The Plaintiff admits that "the core issue in this action is whether defendants unfairly and deceptively employed a series of sham corporations and other shell entities—including, among others, AT & T of California and AT & T Wireless of California—to mask the true nature of the entity through which they hoped to acquire wireless telecommunications licenses reserved for small- and minority-owned businesses." Plaintiff's Mem. in Opp. to Motion to Dismiss ("Pl.Opp.") at 5. The Plaintiff admits that the gravamen of the complaint is the allegation that ANW, with its partial AT & T ownership, did not qualify to participate as a designated entity in the relevant auctions. "[The Plaintiff] alleges that defendants raised the prices bid by legitimate entrepreneurs in the small-business auction through unfair manipulation of a series of shell corporations and other entities." Pl. Opp. at 15, *citing* Compl. ¶¶ 3, 22–28. "TPS Utilicom and other small companies (and, as a result, consumers) nonetheless have been injured by defendants' conduct because Alaska Native's very participation in Auction No. 35—regardless of any licenses it may receive—raised overall prices in the auction." Pl. Opp. at 16. The Plaintiff admits that it rests its unfair business practices claim on the Defendants' entry into Auction No. 35—that such entry was a "business act" for the unfair competition claim, and that the entry was a violation of the law. Pl. Opp. at 19.

**4.** The character, not the scope, of the FCA express preemption provision, 47 U.S.C. § 332(c)(3)(A), is at issue with respect to subject matter jurisdiction.

**5.** The Supreme Court recognizes complete preemption in three instances: 1) ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), *see Met. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987);

## 1. There is no complete preemption of state claims by the Communications Act of 1934, as amended.

AT & T argues that the Communications Act of 1934, as amended, 47 U.S.C. §§ 151 et. seq ("FCA") bars these state claims under 1) express; 2) field; and 3) conflict preemption. As regards its subject matter jurisdiction the Court limits its attention to the question of whether there is *complete preemption* under the FCA without considering whether the Defendants raise a valid federal preemption defense.[4] A federal preemption defense does not convert state claims into a federal question except in the special case of complete preemption.[5] Preemption alone does not confer removal or federal question jurisdiction.

### A. Complete preemption.

Complete preemption is a judicially crafted "independent corollary" to the well-pleaded complaint rule. When the Court concludes "that the pre-emptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.' [*Met. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65, 107 S.Ct. 1542, 1547, 95 L.Ed.2d 55 (1987) ]." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393, 107 S.Ct. 2425, 2430, 96 L.Ed.2d 318 (1987). "Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered,

2) the LMRA § 301, 29 U.S.C. § 185, *see Avco Corp. v. Aero Lodge No. 735*, 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968); and 3) for claims relating to possessory rights in Indian land grants, *see Marcus v. AT&T Corp.*, 138 F.3d 46, 54 (2d Cir.1998), *citing Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 666–67, 94 S.Ct. 772, 776–77, 39 L.Ed.2d 73, (1974).

from its inception, a federal claim, and therefore arises under federal law." *Id.,citing Franchise Tax Board of California v. Construction Laborers Vacation Trust for Southern California,* 463 U.S. 1, 24, 103 S.Ct. 2841, 2854, 77 L.Ed.2d 420 (1983). *See generally* 14B Charles Alan Wright, Arthur R. Miller and Edward H. Cooper, *Federal Practice and Procedure* § 3722.1 (West 1998).

Complete pre-emption is a narrow doctrine. *See, e.g., Marcus v. AT&T Corp.,* 138 F.3d 46, 54 (2d Cir.1998)(discussing "narrow scope" of complete preemption after *Met. Life* ); *generally* 14B Wright & Miller § 3722.1, at 517 ("Because of the obvious federalism implications of the complete-preemption doctrine, its application has been extremely limited by the courts. As the doctrine has developed, two principal substantive areas of complete preemption have emerged: actions under the LMRA ... and actions under ERISA.") Nevertheless, the lower courts have found complete preemption in several contexts other than the LMRA and ERISA. *See* 14B Wright & Miller § 3722.1 n. 27 (collecting cases finding complete preemption under several federal statutes).

Neither the Supreme Court nor the Ninth Circuit has formulated a precise test to determine whether to apply the complete preemption doctrine to any given federal statute. The Supreme Court has made it clear that the "touchstone of the federal district court's removal jurisdiction is ... the intent of Congress." *Met. Life,* 481 U.S. at 66, 107 S.Ct. at 1542.[6] The Ninth Circuit does not elaborate on any inquiry beyond Congressional intent. *See Holman v. Laulo–Rowe Agency,* 994 F.2d 666, 668 (9th Cir.1993)("The test is whether Congress clearly manifested an intent to convert state law claims into federal-question claims.").

Other circuits specify more detailed tests for whether a federal statute completely preempts state law. The Third Circuit, for example, considers: 1) whether the federal statute contains civil enforcement provisions under which the plaintiff's state claims could be brought; and 2) whether the federal statute contains a "clear indication of a Congressional intention to permit removal despite the plaintiff's exclusive reliance on state law." *Goepel v. National Postal Mail Handlers Union,* 36 F.3d 306, 311–12 (3d Cir.1994), *cert. denied,* 514 U.S. 1063, 115 S.Ct. 1691, 131 L.Ed.2d 555 (1995).[7]

**6.** In *Met. Life* the Supreme Court found Congressional intent for complete preemption under ERISA on the basis of the similarity in the language of the jurisdictional subsection of ERISA § 502(f) and LMRA § 301(a), as well as through examination of the ERISA legislative history. *See Met. Life,* 481 U.S. at 65–67, 107 S.Ct. at 1547 ("The presumption that similar language in two labor law statutes has a similar meaning is fully confirmed by the legislative history of ERISA's civil enforcement provisions.").

The venue provision of the jurisdictional grant in the LMRA states:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties,

without respect to the amount in controversy or without regard to the citizenship of the parties.

LMRA § 301(a), 29 U.S.C. § 185(a).

The jurisdictional subsection of ERISA's civil enforcement provisions states:

The district courts of the United States shall have jurisdiction, without respect to the amount in controversy or the citizenship of the parties, to grant the relief provided for in subsection (a) of this section in any action.

ERISA § 502(f), 29 U.S.C. § 1132(f).

The relevant Congressional intent for complete preemption is to confer removal jurisdiction on preempted state actions, not an intent to preempt state law.

**7.** The Fifth Circuit follows a similar test, considering whether: 1) the statute contains a civil enforcement provision that creates a

## B. There is no Congressional intent to confer removal jurisdiction under the FCA.

### 1. The contours of FCA preemption.

The FCA expressly preempts any state regulation of rates or market entry into telecommunications. The FCA states that "no State or local government shall have any authority to regulate the entry of or the rates charged by any commercial mobile service or any private mobile service, except that this paragraph shall not prohibit a State from regulating other terms and conditions of commercial mobile services." 47 U.S.C. § 332(c)(3)(A).

The FCA includes a savings clause, which provides that "[n]othing in this chapter shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies." 47 U.S.C. § 414.

### 2. The character of § 332(c)(3)(A) preemption.

#### a. Nonbinding authority.

The Ninth Circuit has not decided whether the express preemption clause at 47 U.S.C. § 332(c)(3)(A) provides complete preemption.[8] Other courts split on the character of FCA preemption under § 332(c)(3)(A).

The Seventh Circuit holds that § 332(c)(3)(A) completely preempts conflicting state law. *See Bastien v. AT&T Wireless Services, Inc.*, 205 F.3d 983 (7th Cir.2000). The Court focused on the proscription of "*any* authority to regulate." *See Bastien*, 205 F.3d at 986–87 ("There can be no doubt that Congress intended complete preemption [when it adopted § 332(c)(3)(A)]. This clause completely preempted the regulation of rates and market entry, allowing removal to federal court, although the savings clause continues to allow claims that do not touch on the areas of rates or market entry.")[9]

---

cause of action that both replaces and protects the analogous area of state law; 2) there is a specific jurisdictional grant to the federal courts for enforcement of the right; and 3) there is a clear Congressional intent that claims brought under the federal law be removable. *See Johnson v. Baylor University*, 214 F.3d 630, 632 (5th Cir.2000).

**8.** The Ninth Circuit does hold that Subchapter II of the FCA vests exclusive jurisdiction for actions under 47 U.S.C. § 207 in both the federal courts and the FCC. *See AT & T Corp. v. Coeur D'Alene Tribe*, 283 F.3d 1156, 1163 (9th Cir.2002)("By its express language, § 207 establishes concurrent jurisdiction in the FCC and federal district courts only, leaving no room for adjudication in any other forum—be it state, tribal or otherwise."). Subchapter II of the FCA deals with suits against common carriers, whereas 47 U.S.C. § 332 comes under Subchapter III (radio special provisions) and deals specifically with mobile telecommunication services.

47 U.S.C. § 207 provides that "[a]ny person claiming to be damaged by any common carrier subject to the provisions of this chapter may either make complaint to the Commission as hereinafter provided for, or may

bring suit for the recovery of the damages for which such common carrier may be liable under the provisions of this chapter, in any district court of the United States of competent jurisdiction; but such person shall not have the right to pursue both such remedies." *Id.*

**9.** The Seventh Circuit does not add anything beyond this conclusory analysis. The holding seems to rest on the use of the word *any* in § 332(c)(3)(A).

The *Bastien* reasoning is buttressed, however, by the later decided FCC opinion in *In re Wireless Consumers Alliance, Inc.*, 15 F.C.C.R. 17,021, at ¶ 12, 2000 WL 1140570 (2000)("the judicial branch of state government is included within the meaning of "State or local government" under Section 332(c)(3)"), *citing Shelley v. Kraemer*, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948), and *BMW of North Am., Inc. v. Gore*, 517 U.S. 559, 572 n. 17, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996). Invoking this FCC opinion, the Defendants appear to argue that the plain language of Section 332(c)(3)(A) reveals intent to confer removal jurisdiction by explicitly disabling state courts from adjudicating preempted claims.

The Second Circuit reaches the opposite conclusion. *See Marcus v. AT&T Corp.*, 138 F.3d 46, 53 (2d Cir.1998)("[T]he FCA does not itself provide a basis for removal pursuant to the complete preemption doctrine.").[10]

The majority of district courts outside the Seventh Circuit that have reached this issue find no complete preemption under a more searching analysis of the Congressional intent underlying 47 U.S.C. § 332(c)(3)(A). *See, e.g., Bryceland v. AT & T Corp.*, 122 F.Supp.2d 703, 710 (N.D.Tex.2000)("A careful reading of the FCA reveals no indicia of congressional intent to create removal jurisdiction. Although Section [332(c)] of the Act

preempts certain state law causes of action, there is no indication that Congress intended to make such claims removable.").[11] Both the LMRA and ERISA lack a savings clause analogous to FCA § 414, and the plain language of § 414 suggests no Congressional intent to provide removal jurisdiction. *See* 47 U.S.C. § 414; *supra* note 11 (collecting cases).

### b. The FCA lacks Congressional intent to confer removal jurisdiction.

As a matter of first impression the Court looks to the statute for evidence of Congressional intent to confer removal jurisdiction. *See DeGeorge v. United States District Court*, 219 F.3d 930, 936 (9th

---

In *Wireless* the FCC ruled on the scope of express preemption under Section 332. There was no question of intent relating to removal jurisdiction at issue in the case. Instead, the agency was required to determine whether Section 332(c)(3)(A) generally preempts state courts from awarding monetary relief as a remedy for state consumer protection, tort or contract claims. *See Wireless*, 15 F.C.C.R. 17,021 at ¶¶ 10–11, 2000 WL 1140570. The agency held that a state court judgment could come within the scope of express preemption under section 332, but that monetary damages were not *per se* preempted as state regulation of market rates. *See id.* at ¶¶ 12–14, 2000 WL 1140570.

**10.** In *Marcus*, the plaintiffs were customers who brought claims of deceptive acts and practices, false advertising, fraud and deceit, negligent misrepresentation, breach of warranty and unjust enrichment against the defendant, a long distance company. The defendants removed under a complete preemption theory, and the district court denied a motion to remand and dismissed. The Second Circuit affirmed. The Second Circuit held that there was no complete preemption under the FCA, but that a breach of warranty claim under a FCA tariff provided a federal question. *See Marcus* 138 F.3d at 51–52.

The analysis in *Marcus* is somewhat confused. The Court did not specifically address itself to any express preemption clause in the

FCA. *See Marcus*, 138 F.3d at 53. The Court also treated "federal common law" preemption as somehow providing a distinct basis of federal question jurisdiction from the doctrine of "complete preemption," then rested its holding of 'no federal common law preemption' on a finding that the specific state claims in the case came within the bounds of the FCA savings clause. *See id.* at 54. Consequently, *Marcus* is more useful in defining the boundaries of the FCA savings clause then evaluating the character of the express preemption at § 332(c)(3)(A).

**11.** *See also Aronson v. Sprint Spectrum, L.P.*, 90 F.Supp.2d 662, 667–68 (W.D.Pa.2000)("Congressional intent to permit removal is wanting"); *DeCastro v. AWACS, Inc.*, 935 F.Supp. 541, 551 (D.N.J. 1996); *Bennett v. Alltel Mobile Comm. of Alabama, Inc.*, No. CIV. A. 96–D–232–N, 1996 WL 1054301, at * 3–5 (M.D.Ala. May 14, 1996).

The district courts finding no complete preemption under § 332(c)(3)(A) observe that both ERISA and the LMRA lack a provision resembling FCA § 414, and that the FCA savings clause at § 414 indicates the absence Congressional intent to provide removal jurisdiction. *See, e.g., Bryceland*, 122 F.Supp.2d at 710; *Aronson*, 90 F.Supp.2d at 668; *DeCastro*, 935 F.Supp. at 551 (D.N.J.1996); *Bennett*, No. CIV. A. 96–D–232–N, 1996 WL 1054301, at *5.

Cir.2000)(purpose of statutory interpretation is to discern Congressional intent in enacting the particular statute), *quoting United States v. Daas,* 198 F.3d 1167, 1174 (9th Cir.1999). No such intent is evidenced in the plain language of the statute, and there is no ambiguity in the plain language warranting resort to the legislative history.

"The first step in ascertaining congressional intent is to look to the plain language of the statute. To determine the plain meaning of a particular statutory provision, and thus congressional intent, the court looks to the entire statutory scheme." *United States v. Daas,* 198 F.3d 1167, 1174 (9th Cir.1999).

The FCA does not expressly confer removal jurisdiction on claims under the Act.[12] The language that "no State or local government shall have *any* authority to regulate the entry of or the rates charged," 47 U.S.C. § 332(c)(3)(A)(emphasis added), only supports the proposition that the FCA preempts state claims within the scope of this provision. The titles of the statutory sections confirm the limited reach of the preemption provision to choice of law rather than extending to removal jurisdiction. Section 332(c) is addressed to "Regulatory treatment of mobile services," and subsection 3 is titled "State preemption." *See* 47 U.S.C. § 332(c).

The Seventh Circuit reads too much into this plain language and interprets the preemption clause as conferring removal jurisdiction. The Defendants argue that the Seventh Circuit properly infers Congressional intent to confer removal jurisdiction because the state courts are included in

the recitation of "no State or local government." *See supra* note 9. Under that reading the plain language of § 332(c)(3)(A) strips the state courts of the power to adjudicate claims within the preemptive reach of the FCA.

Even if the language addressed by the Seventh Circuit could support an inference of intent to confer removal jurisdiction, that intent is not so clearly stated as to support complete preemption. *Cf. Goepel,* 36 F.3d at 311–12; *Johnson,* 214 F.3d at 632. Instead, the Court agrees with the analysis in *Bryceland,* 122 F.Supp.2d at 710, *supra. See also supra* note 11, collecting cases. Accordingly, this Court does not have subject matter jurisdiction as a result of complete preemption.[13]

2. **There is diversity jurisdiction and the action as properly removed under § 1441(b), based on exclusion of the citizenship of fraudulently joined resident Defendants.**

 Ordinarily a resident defendant cannot remove an action. *See* 28 U.S.C. § 1441(b)("[any action not based on a federal question] shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which the action is brought."). Section 1441(b) does not prevent removal of an action to which the plaintiff fraudulently joins resident defendants. *See Morris v. Princess Cruises, Inc.,* 236 F.3d 1061, 1067 (9th Cir.2001); *McCabe v. General Foods Corp.,* 811 F.2d 1336, 1339 (9th Cir.1987)("If the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the

---

12. The relevant jurisdictional provision states that "no State or local government shall have any authority to regulate the entry of or the rates charged by any commercial mobile service or any private mobile service, except that this paragraph shall not prohibit a State from regulating other terms and conditions of com-

mercial mobile services." 47 U.S.C. § 332(c)(3)(A).

13. The merits of AT & T's preemption defenses relate to choice of law and must await a determination of the Court's jurisdiction.

state, the joinder of the resident defendant is fraudulent.").[14] The Court disregards the citizenship of fraudulently joined—or sham—defendants when testing for diversity jurisdiction. *Id.*

The fraudulent joinder argument is joined in a confusing mix of briefs. Neither the AT & T Defendants' Motion to Dismiss nor its Reply in Support of the motion to dismiss present argument or evidence relating to the alleged fraudulent joinder of any resident defendants, except insofar as the AT & T Defendants generally challenge the state claims for failure to state a claim against any Defendant. However, the AT & T Defendants join in the Defendant ANW Opposition to TPS's application for remand.

ANW's Opposition raises the fraudulent joinder argument, and TPS joins issue with this argument in its Motion to Remand and the Reply in support of the motion to remand. Accordingly, the Court considers whether there is diversity in this action. As described below, TPS fraudulently joined two resident defendants.

### A. Citizenship of the 'resident' defendants.

The AT & T Defendants AT & T Communications of California, Inc. and AT & T Wireless Services of California, L.L.C. are resident defendants.

The citizenship of a corporation is both the place of incorporation and its principle place of business. *See* 28 U.S.C. ¶ 1332(c)(1). The parties agree that AT & T Communications of California, Inc., has a principal place of business in California. *See, e.g.,* Complaint ¶ 9; Addendum to Civil Cover Sheet item IX (stating places of incorporation and headquarters of Defendants).

A limited liability company ("L.L.C.") is treated like a partnership for the purpose of establishing citizenship under diversity jurisdiction. *See Cosgrove v. Bartolotta,* 150 F.3d 729, 731 (7th Cir. 1998).[15] For diversity, the citizenship of *each member* of the partnership must be considered. *See Carden v. Arkoma Assoc.,* 494 U.S. 185, 195, 110 S.Ct. 1015, 108 L.Ed.2d 157 (1990)(rejecting extension of the place of incorporation or principal place of business test for corporate citizenship to the citizenship of a partnership for diversity purposes); *United Steelworkers of America v. R.H. Bouligny, Inc.,* 382 U.S. 145, 86 S.Ct. 272, 15 L.Ed.2d 217 (1965)(for purposes of diversity jurisdiction, an unincorporated association's citizenship is taken to be that of each of its members); *Mutuelles Unies v. Kroll & Linstrom,* 957 F.2d 707, 711 (9th Cir.1992).

The complaint neither identifies nor alleges the citizenship of all partners to AT & T Wireless Services of California, L.L.C.—or any Defendant L.L.C.'s—though it does allege that this particular entity "is a limited liability company formed under the laws of Delaware and registered and conducting business on behalf of AT & T Wireless in California, the general partner of which is AT & T Wireless." Complaint ¶ 11. The complaint alleges that AT & T Wireless, in turn, is now a Delaware corporation—at the time of the accused conduct a wholly owned subsidiary of AT & T—with headquarters in the State of Washington. *See* Complaint ¶ 10.

It falls to the removing Defendants to establish that none of the properly joined Defendants are California residents. To do this the Defendants must show: 1) that TPS fraudulently joined AT & T Communications of California, Inc.; and 2) either

---

14. Fraudulent joinder is a judicially crafted exception to the rule of complete diversity.

15. TPS admits as much in its Opposition to ANW's Motion to Dismiss. *See* TPS Opp. to ANW Mot. to Dismiss, at 8:24–27.

a) that none of the partners of *any* defendant L.L.C.—in particular, AT & T Wireless Services of California, L.L.C.—are California citizens, or b) that TPS fraudulently joined any defendant L.L.C. having at least one California partner. *See Gaus v. Miles, supra,* 980 F.2d at 566.

The Notice of Removal implies that AT & T Wireless Services of California, L.L.C. is the only resident defendant L.L.C. *See* Notice of Removal ¶ 3 (arguing only that AT & T Communications of California, Inc. and AT & T Wireless Services of California, L.L.C. were fraudulently joined). The Notice asserts that there is otherwise complete diversity. *Id.* ¶ 2. TPS argues that the Defendants admit the California citizenship of these two entities by the Addendum to Civil Cover Sheet item IX. That Addendum admits that AT & T Communications of California, Inc. is incorporated in California, and that AT & T Wireless Services of California, L.L.C. is "incorporated" in California with principal place of business in San Francisco. The Court takes this addendum as an averment of the law under which the L.L.C. is organized.

■ However, the place of organization of an L.L.C. is not relevant to its citizenship for diversity purposes. *See Carden, supra.* The Defendants have not carried their burden of establishing the citizenship of the L.L.C. defendants. Nonetheless, TPS's failure to dispute the citizenship of the L.L.C.'s other than AT & T Wireless Services of California, L.L.C. is construed as an admission that these other limited liability companies are not resident defendants. Accordingly, the Court draws the inference against the removing party and considers AT & T Wireless Services of California, L.L.C. a resident defendant. It falls to the Defendants to establish that this defendant was fraudulently joined.

## B. TPS fraudulently joined both of the resident Defendants.

■ There is fraudulent joinder when there is no possibility of recovery against a resident defendant "according to the settled rules of the state." *McCabe; see also Ritchey v. Upjohn Drug Co.,* 139 F.3d 1313, 1318–19 (9th Cir.1998). There is no cause of action stated when the relevant claim is patently spurious, or when there is no reasonable basis for imposing liability on the resident defendant. *See Parks v. New York Times Co.,* 308 F.2d 474, 477 (5th Cir.1962).

■ While the test for fraudulent joinder resembles a Rule 12(b)(6) analysis in that the Court accepts non-conclusory factual allegations in the complaint as true and does not consider the merits of defenses (other than procedural bars) claimed by the resident defendant, the Court's inquiry is broader than under Rule 12(b)(6). "The defendant seeking removal to the federal court is entitled to present the facts showing the joinder to be fraudulent." *McCabe,* 811 F.2d at 1339; *see also Ritchey,* 139 F.3d at 1317 (quoting *McCabe* and collecting cases); *Wilson v. Republic Iron & Steel Co.,* 257 U.S. 92, 97, 42 S.Ct. 35, 37, 66 L.Ed. 144 (1921)(defendant entitled to present facts showing that it has "no real connection with the controversy").

■ Whether or not a plaintiff may recover on the stated claims against the resident defendants does *not* include consideration of whether, with further discovery, the plaintiff may uncover a factual basis for its claims—rather, the deference given to the plaintiff in a fraudulent joinder analysis means that the court refrains from delving into the merits of defenses that do not present a procedural bar to the action.

■ In this action TPS' claims of unfair business practices and interference

with prospective economic advantage against both AT & T Communications of California, Inc. and AT & T Wireless Services of California, L.L.C. ("resident defendants") are wholly deficient. The complaint contains no factual allegation of factual basis for asserting either claim against these defendants. There is no allegation of conduct by these defendants that would satisfy the conduct element of either claim.

TPS argues that the resident defendants are properly joined because 1) they are AT & T affiliates; and 2) "one element of the scheme [alleged in the complaint] included the acquisition of the wireless telecommunications license covering Los Angeles reserved for small and minority-owned businesses." TPS Mot. to Remand at 11:9–11. TPS implies that the resident defendants are somehow destined to acquire this Los Angeles area license. Nothing in the complaint, however, alleges any conduct on the part of the resident defendants in relation to the auction at issue. TPS bases its joinder of the resident defendants on speculation about future conduct. This is insufficient.

TPS cannot allege these claims against the resident defendants merely by asserting that they were, at the time of the accused conduct corporate, affiliates and subsidiaries of AT & T. See *McCabe v. Henpil, Inc.,* 889 F.Supp. 983, 992 (E.D.Tex.1995)("the subsidiary corporation is not liable for the acts of the parent or shareholder merely on the basis of alter ego"); *cf. Roman Catholic Archbishop of San Francisco v. Superior Court,* 15 Cal. App.3d 405, 93 Cal.Rptr. 338, 342 (1971)(no respondeat superior liability between sub-agents under alter ego analysis in California law).

TPS cannot resist the fraudulent joinder analysis by arguing that future discovery might turn up a factual basis for alleging unfair practices or interference with pro-

spective economic advantage against these resident defendants. *See, e.g., Poulos v. Naas Foods, Inc.,* 959 F.2d 69, 74 (7th Cir.1992). In any event, the propriety of removal is determined at the time of removal—not according to the factual allegations stated at a later date. *See Ritchey, supra,* 139 F.3d at 1318.

■ The factual allegations in the complaint against the resident defendants are wholly inadequate under California law to state a claim for either unfair business practices or interference with prospective economic advantage. Under California Bus. & Prof.Code § 17200, a claim of unfair business practices requires an "unlawful, unfair or fraudulent business *act* or *practice* [or] unfair, deceptive, untrue or misleading advertising [or] any *act* prohibited [by Chapter 1, § 17500 et seq.]". Cal. Bus. & Prof.Code § 17200 (emphasis added). A claim for intentional interference with prospective economic advantage requires "intentional acts on the part of the defendant designed to disrupt the [economic] relationship." *Pacific Gas & Elec. Co. v. Bear Stearns & Co.,* 50 Cal.3d 1118, 270 Cal.Rptr. 1, 791 P.2d 587, 590 (1990). Moreover, California law requires that a plaintiff plead *facts* constituting a cause of action. *See* Cal.Code Civ. P. § 425.10. Nothing in this complaint alleges *any* such act by either resident defendant.

TPS makes striking admissions in its motion for remand. First, TPS admits that it does not have a factual basis for asserting claims against the resident defendants but only joined them "out of a reasonable belief that [each] defendant *may* have been a responsible party." TPS Mot. to Remand at 5:7–8. TPS then asserts that it named the resident defendants, not because it had a factual basis for asserting these two state claims against them, but "because those [the resident defendants] are the AT & T affiliates doing business in California." *Id.* at 5:20.

TPS has not stated a claim against either resident defendant. The resident defendants are fraudulently joined, and the Court disregards their citizenship when testing for diversity.

### C. The Court has diversity jurisdiction.

As discussed above, TPS admits that the none of the remaining L.L.C. defendants have California citizenship for purposes of diversity. Furthermore, it is undisputed that the remaining defendants have diverse citizenship. The complaint alleges damages in excess of $75,000. *See* Complaint ¶ 49. Accordingly, this Court has diversity jurisdiction under 28 U.S.C. § 1332 and removal was proper under 28 U.S.C. § 1441. TPS's motion to remand must be denied.

### B. The Court has no personal jurisdiction over ANW.

The Court has no general or specific jurisdiction over ANW based on the allegations in the complaint.[16] While there are grounds to permit further discovery regarding general jurisdiction over members of ANW that might subject ANW itself to general jurisdiction, that additional discovery is unnecessary in light of the complaint's failure to state a claim.

 The plaintiff bears the burden of establishing personal jurisdiction. *See Ziegler v. Indian River County*, 64 F.3d 470, 473 (9th Cir.1995). Where the Court evaluates the jurisdictional facts related to personal jurisdiction on the papers, the plaintiff need only establish a prima facie case of the existence of personal jurisdiction. *See Ochoa v. J.B. Martin and Sons Farms, Inc.*, 287 F.3d 1182, 1187 (9th Cir.

2002); *Data Disc, Inc. v. Sys. Tech. Associates, Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977).

The California long arm statute extends to the limitation of due process in the Constitution. *See* California Code Civ. P. § 410.10; *Ziegler*, 64 F.3d at 473; *Data Disc*, 557 F.2d at 1286 & n. 1.

#### 1. There is no general jurisdiction over ANW.

 General jurisdiction under the due process clause requires systematic and continuous contacts with the forum state and the exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice. *Ziegler*, 64 F.3d at 473. In this case ANW is a Delaware L.L.C., with headquarters in Alaska, that does no business in California. There is no general jurisdiction over ANW.

#### 2. There is no specific jurisdiction over ANW.

 Specific jurisdiction exists when: 1) the defendants purposefully avail themselves of the privilege of conducting activities in California, thereby invoking the protections of its laws; 2) the plaintiff's claims arise out of the defendants' California-related activities; *and/or* 3) the exercise of jurisdiction would be reasonable. *See Ochoa*, 287 F.3d at 1189 n. 2; *also Ziegler*, 64 F.3d at 473.

 Where "considerations of reasonableness dictate," "jurisdiction may be established on a lesser showing of minimum contacts." *Ochoa*, 287 F.3d at 1189 n. 2, construing the three prong test for specific jurisdiction in the disjunctive where considerations of reasonableness strongly favor asserting specific jurisdiction.[17]

---

**16.** ANW erroneously cites Rule 12(b)(3) as the basis of its alternative argument to dismiss for lack of jurisdiction. The Court treats the challenge under Rule 12(b)(2).

**17.** Whether exercise of personal jurisdiction is reasonable depends on a multiple factor balancing taking into consideration: 1) the extent of defendants' purposeful interjection into the forum state's affairs; 2) the burden on the defendant; 3) conflicts of law between

Where such considerations are lacking, the test for specific jurisdiction remains in the conjunctive. *Id.* In addition, the test of specific jurisdiction over tort claims is broadly construed. "In tort cases ... jurisdiction may attach if an out-of-forum defendant merely engages in conduct aimed at, and having effect in, the situs state." *Ziegler*, 64 F.3d at 473. A lesser showing of purposeful availment may lower the threshold of the plaintiff's prima facie case, but it does not eliminate the requirement from specific jurisdiction under the due process clause.

■ This complaint does not sufficiently allege a basis of purposeful availment. TPS argues that ANW won the auction for the wireless communication license in Los Angeles. TPS is a New York corporation. TPS claims that it was injured 1) by ANW's *participation* in the auction when ANW drove up the bidding prices (the unfair business practices claim); 2) by ANW's *winning* various licenses on grounds that TPS *would have won but for ANW's participation*, thereby depriving TPS of a license it would have won and depriving TPS of a prospective economic advantage of future customers under the license.

Neither of the cases relied upon by TPS for testing purposeful availment speak to the facts alleged in this complaint. In *Shute v. Carnival Cruise Lines*, 897 F.2d 377 (9th Cir.1990), the court held that "a non-resident defendant's act of soliciting business in the forum state will generally be considered purposeful availment if that solicitation results in contract negotiations or the transaction of business," *id.* at 381, and that "the physical absence of the defendant and the transaction from the forum cannot defeat the exercise of personal jurisdiction," *id.* at 382. Unlike *Shute*, in this case it is undisputed that ANW did *not* solicit business in California. The factual allegations in this action are much more remote—that ANW *bid* in an auction for a wireless license covering the Los Angeles area, and won that bid. Although allegations that ANW has solicited business under that license would support specific jurisdiction under *Shute*, no such allegations are present here. The complaint does not allege that ANW solicited, let alone entered into contracts with instate parties or for performance in state, under the license.

The factual allegations here are distinguishable from the basis of purposeful availment in *Roth v. Garcia Marquez*, 942 F.2d 617 (9th Cir.1991). In *Roth*, the court held that a non-resident defendant purposefully availed himself of California law when he reneged on a movie contract which called for significant performance in California. *Id.* at 622. As discussed in the preceding paragraph, the conduct alleged in this complaint is much more remote. There is no allegation that ANW has reneged on a contract—there is no allegation that ANW has formed *any* contract calling for performance in California. The gravamen of the complaint goes to ANW's *participation in the auction* for the license. The effect on TPS, if there was one, took place in New York where TPS is resident and does business. TPS attempts to stretch the purposeful availment analysis too far. The nature of the license at auction concerns business activity in California—the nature of the complaint does not. There is no prima facie showing of purposeful availment, and there is no per-

the forum state and the defendant's home jurisdiction; 4) the forum's interest in adjudicating the dispute; 5) the most efficient judicial resolution of the dispute; 6) the plaintiff's interest in complete and effective relief; and 7) the existence of an alternative forum. *See Roth*, 942 F.2d at 623; *Data Disc*, 557 F.2d at 1287.

sonal jurisdiction over the defendant ANW.

3. **Although the Plaintiff would otherwise have further discovery to determine whether there is general jurisdiction over ANW through general jurisdiction over the members of ANW, the point is mooted by the Plaintiff's failure to state a claim over any Defendant.**

The Plaintiff makes no showing that the members of ANW are subject to general jurisdiction, thereby subjecting ANW—as an L.L.C.—to general jurisdiction. Instead, TPS asserts that one of ANW's members is AT & T Wireless PCS Interests L.L.C. TPS does not present any factual basis for its claim that AT & T Wireless PCS Interests L.L.C. is subject to general jurisdiction in California, but argues only that this Defendant has *consented* to personal jurisdiction by failing to join ANW's motion to dismiss for lack of personal jurisdiction. *See* TPS Opp. to ANW Mot. to Dismiss at 9.

Were the complaint otherwise viable, the Court would grant TPS further discovery to determine if there is general jurisdiction over ANW by virtue of general jurisdiction over any member of ANW. *Cf. Data Disc,* 557 F.2d at 1285 n. 1. As discussed below, this discovery is unnecessary given the inadequacy of the current complaint.

### C. Both claims must be dismissed.

The Defendants argue that the claims must be dismissed on grounds of express, conflict and field preemption; to enable referral to the FCC under the doctrine of primary jurisdiction; and for failure to state a claim under state law.

TPS fails to state a claim for interference with prospective economic advantage under state law. In any event, both claims are preempted by the FCA and must be dismissed.

1. **The interference with prospective economic advantage claim is defective under state law because it doe not allege interference with any ongoing economic relationship.**

■■ A claim for interference with prospective economic advantage requires allegation of an ongoing economic relationship between the plaintiff and a third party with which the defendant has interfered. *See Buckaloo v. Johnson,* 14 Cal.3d 815, 827, 122 Cal.Rptr. 745, 537 P.2d 865 (1975)(elements of the tort); *see also Rickards v. Canine Eye Registration,* 704 F.2d 1449, 1456 (9th Cir.1983)(the economic relation must be ongoing); *Westside Center Assocs. v. Safeway Stores 23, Inc.,* 42 Cal. App.4th 507, 524, 49 Cal.Rptr.2d 793 (1996)(same); *Roth v. Rhodes,* 25 Cal.App. 4th 530, 546, 30 Cal.Rptr.2d 706 (1994)(same). An allegation of interference with a *potential* customer is too speculative to state a claim for interference with prospective economic advantage.

■ This complaint alleges no more than interference with potential customers with which TPS has no existing relation. *See* Complaint ¶ 47(a) ("TPS had a valid an enforceable expectation of an economic relationship with thousands of consumers residing in markets *it plans to serve.*")(emphasis added). TPS misplaces the law's emphasis on expectations: an expectation of an economic relation is not actionable. Rather, an expectation of economic advantage based on an ongoing economic relationship is required. TPS has not stated a claim for interference with prospective economic advantage. *Cf. Blank v. Kirwan,* 39 Cal.3d 311, 331, 216 Cal.Rptr. 718, 703 P.2d 58 (1985)("If . . . plaintiff is attempting to allege that the requisite economic

relationship is with the class of potential poker club patrons, he still fails adequately to state the first element [of intentional interference with prospective economic advantage]. In light of the city council's

18. Although the Defendants' argument that the unfair business claim fails to allege actionable injury is correct in part, it does not dispose of the entire claim on state law grounds.

Damages are not recoverable under § 17203, and a plaintiff seeking damages has no standing to raise a claim of unfair business practices under that section.

A [§ 17203] action is an equitable action by means of which a plaintiff may recover money or property obtained from the plaintiff or persons represented by the plaintiff through unfair or unlawful business practices. It is not an all-purpose substitute for a tort or contract action. "[D]amages are not available under section 17203. [citing *Dean Witter Reynolds, Inc. v. Superior Court,* 211 Cal.App.3d 758, 774, 259 Cal.Rptr. 789 (1989); *Industrial Indemnity Co. v. Superior Court,* 209 Cal.App.3d 1093, 1095–1097, 257 Cal.Rptr. 655 (1989); 11 Witkin, Summary of Cal. Law Equity, § 95 at 776 (9th ed.1990); *see also Chern v. Bank of America* 15 Cal.3d 866, 875, 127 Cal.Rptr. 110, 544 P.2d 1310 (1976)(interpreting the nearly identical language of section 17535)]." [*See also*] *Bank of the West v. Superior Court,* 2 Cal.4th 1254, 1266, 10 Cal.Rptr.2d 538, 833 P.2d 545 (1992).
*Cortez v. Purolator Air Filtration Products Co.,* 23 Cal.4th 163, 173, 96 Cal.Rptr.2d 518, 999 P.2d 706 (2000).

In this complaint TPS seeks "restitution in an amount to be proved at trial ... which will restore it to the position in which it would have been but for [the alleged] unlawful and unfair business acts." Complaint ¶ 43. TPS also seeks disgorgement of "the total amount by which [the Defendants] have been unjustly enriched, including the full amount of the savings they obtained by acquiring licenses in the closed auction that they otherwise would have obtained in the open auction .... plus the value to the defendants of the licenses they obtained in the closed auction but would have been unable to obtain in the open auction." Complaint ¶ 44. Finally, TPS seeks a constructive trust "upon any future revenues that defendants may accrue from licenses that

broad discretion to grant or deny a license application, plaintiff has pleaded and can plead no protectible "expectancy," but at most a hope for an economic relationship and a desire for future benefit.").[18]

they obtained in the closed auction." Complaint ¶ 45.

"[S]ection 17203 operates only to return to a person those *measurable amounts* which are *wrongfully taken* by means of an unfair business practice." *Day v. AT & T Corp.,* 63 Cal.App.4th 325, 339, 74 Cal.Rptr.2d 55 (1998). "The offending party must have obtained something to which it was not entitled *and* the victim must have given up something which he or she was entitled to keep." *Id.,* at 340, 74 Cal.Rptr.2d 55.

Although the specific amounts identified in the complaint do not appear recoverable as equitable or restitutionary relief under § 17203—because the theory in ¶ 43 appears to disguise a prayer for compensatory damages as restitution, and the theories in ¶¶ 44–45 do not identify interests to which TPS was otherwise entitled—if TPS established that the Defendants engaged in some unfair business practice within § 17203 there is conceivably some recovery available in equity or restitution even though the precise basis of such relief is not clear from the complaint.

In the current complaint TPS disguises a claim for damages, which are not recoverable under § 17203, as a claim for equitable and restitutionary relief. TPS's own choice of language in the complaint at ¶ 43 makes this difference clear. This is a complaint for compensatory damages. "A plaintiff's remedy in tort is compensatory in nature and damages are generally intended not to punish a negligent defendant but *to restore an injured person as nearly as possible to the position he or she would have been in had the wrong not been done.*" *Turpin v. Sortini,* 31 Cal.3d 220, 232, 182 Cal.Rptr. 337, 643 P.2d 954 (1982)(emphasis added); *cf. MAI Sys. Corp. v. UIPS,* 856 F.Supp. 538, 542 (N.D.Cal.1994)("[c]ompensation for a lost business opportunity is a measure of damages and not restitution to the alleged victims").

The remaining theories of injury do not identify any property interest that TPS was entitled to keep. They do not state actionable injury supporting relief under § 17203.

**2. Even if TPS stated a claim for unfair competition or interference with prospective economic advantage, the FCA expressly preempts these claims on the factual basis asserted in the complaint.**

██ Both state claims come within the express preemption clause of the FCA at 47 U.S.C. § 332(c)(3)(A) and must be dismissed. In the alternative, both claims are subject to conflict preemption under the FCA.

██ As previously discussed, the FCA expressly preempts any state regulation of rates or market entry into telecommunications. The FCA states that "no State or local government shall have any authority to regulate the entry of or the rates charged by any commercial mobile service or any private mobile service, except that this paragraph shall not prohibit a State from regulating other terms and conditions of commercial mobile services." 47 U.S.C. § 332(c)(3)(A). For purposes of § 332(c)(3)(A), state regulation of entry includes lawsuits and state judicial action. *See, e.g., In re Wireless Consumers Alliance, Inc.,* 15 F.C.C.R. 17021, No. 00–292, 2000 WL 1140570, ¶ 12 (August 14, 2000)("The judicial branch of state government is included within the meaning of 'State and local government' under Section 332(c)(3)(A).").

The FCA includes a savings clause, which provides that "[n]othing in this chapter shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies." 47 U.S.C. § 414.

The basis of TPS's complaint is that it was injured by the Defendants' participation in the license auction. Whether or not the Defendants participation in the auction was legitimate is purely a question of federal law as administered by the FCC. Absent a determination that such partic-

ipation was in some manner wrongful under federal law, the current claims under California law cannot proceed.

TPS's claims are an attempt to regulate entry into the market for wireless communication by challenging the FCC eligibility criteria for competitive bidding on wireless licenses. The claims fall with the express preemption at § 332(c)(3)(A). The criteria for participation in the auctions for "commercial mobile service" are established by the FCC pursuant to its authority under title 47 and as set forth by FCC regulation at 47 C.F.R. §§ 1.2101–1.2113. Whether or not TPS seeks to "invalidate" the licenses acquired by the Defendants in this auction is irrelevant.

Entry to the wireless communication market requires access to the FCC license. The manner by which a party may acquire such a license is determined by the FCC. The express preemption at 47 U.S.C. § 332(c)(3)(A) prevents second guessing of the FCC auction participation criteria by challenge under state law. The structure of the act confirms this analysis. *See, e.g.,* 47 U.S.C. §§ 307(a)-(c)(authority to issue licenses); 308(a), (b) (requirements for licenses); 309(j)(3) (specifying comprehensive scheme of competitive bidding for licenses). The act further provides the FCC with a disciplinary mechanism for resolving disputes over eligibility and license awards. *See, e.g.,* 47 U.S.C. §§ 208(a)(investigation of complaints); 209 (award of damages); 303(m)(1)(license suspension); 309(a) (specifying review process for parties who disagree with FCC licensing determinations); 309(d)(party that objects to an FCC eligibility determination can file a petition with the FCC to deny the license); 312 (license revocation). The two claims in this action are an attempt to challenge the FCC eligibility determina-

tions under state law. Those challenges are expressly preempted.[19]

TPS's unfair business and tortious interference claims would interfere with Congress's full purpose and objectives under the FCA Congress authorized the FCC to develop a competitive bidding process that included "safeguards to protect the public interest in the use of the spectrum" and to promote the varied purposes of the FCA. *See* 47 U.S.C. § 309(j)(3). The FCC complied with that mandate by publishing regulations governing spectrum auctions. *See* 47 C.F.R. §§ 1.2101–1.2113. The regulations specify precise eligibility requirements for the auction and bidding at issue here. *See id.* § 1.2110.

TPS's unfair business claim under California Bus. & Prof.Code § 17203 seeks to test the FCC eligibility determinations by different criteria. These state criteria have no place in the FCC auction scheme. The same holds for the tortious interference claim based on the Defendants' conduct in the relevant auctions. *Cf. Broyde v. Gotham Tower, Inc.*, 13 F.3d 994, 997 (6th Cir.1994)(nuisance claim conflicts with FCA and FCC's interference regulations). The state law intrusion into the FCC's exclusive jurisdiction to establish and run spectrum auctions that TPS attempts in this action would completely undermine the FCC's ability to carry out its Congressional mandate and develop uniform and workable competitive bidding mechanisms. Accordingly, these claims are also field preempted.

## IV. Conclusion.

The Court has diversity jurisdiction. The Plaintiff's motion to remand is DENIED.

The Defendants' motions to dismiss are GRANTED. The Plaintiff fails to state a claim interference with prospective economic advantage under state law, and that claim is dismissed on state law grounds. Even if the Plaintiff had plead actionable state causes of action, the FCA preempts both of these claims through express preemption under § 332 and conflict preemption.

Accordingly, the claims are DISMISSED.

IT IS SO ORDERED.

---

19. If TPS brought the unfair practices and tortious interference claims—properly alleged—*after* a determination that a party had wrongfully participated in an FCC license auction, such claims might escape FCA preemption. That is not the case before the Court.